JOHN D. HENRY v. WILLIAM W. HUTCHINS AND ANOTHER.
WILLIAM W. HUTCHINS v. JOHN D. HENRY.[1]

July 23, 1920.

Nos. 21,724, 21,773.

**Deposit in escrow — case distinguished.**

1. A deposit in escrow of title deeds or other documents, by agreement of the parties, to be delivered by the custodian to the person ultimately entitled to them only after performance of the conditions of the escrow, is not invalid because the person agreed upon as custodian happens to be the agent of one of them. Van Valkenburg v. Allen, 111 Minn. 333, distinguished.

**Same — delivery without performance of conditions of no effect.**

2. A delivery before the performance of the conditions of the escrow, unless performance be waived, is ineffective and confers no rights on the person receiving them.

**Contract — time of performance — five months unreasonable.**

3. The question of what constitutes a reasonable time for the performance of a contract, where no specific time is agreed upon, is ordinarily one of fact to be determined by the jury, but on the facts stated in the opinion it is *held* that there was no error in an instruction to the jury that a stated time was unreasonable as a matter of law.

**Waiver of contract rights.**

4. To justify a court in depriving a party of the benefits of express contract stipulations on the ground of waiver, an intention to waive them should clearly be made to appear or arise by necessary implication from the facts disclosed.

**Same — no question for jury.**

5. The evidence is *held* not to show a waiver within the rule, and that there was no error in the refusal of the court to submit the question to the jury.

**Verdicts sustained.**

6. The evidence is *held* to sustain the verdict in the first above entitled action, and that a directed verdict in the second was not error since both actions involved the same issues between the same parties,

1 Reported in 178 N. W. 807.

and were submitted to the same court upon substantially the same evidence.

**Judgment restoring lien of encumbrances.**

7. The title of plaintiff in an ejectment suit may be adjudged to be subject to certain specific encumbrances which have been canceled or discharged, such discharge or cancelation being properly vacated and the lien of the encumbrances restored of record by the same judgment.

**Evidence.**

8. The record presents no error in the admission or exclusion of evidence.

Two actions in the district court for Kittson county, one to recover $6,912 for the conversion of grain, and the other in ejectment to recover possession of the land on which the grain was raised. The cases were tried separately before Grindeland, J. In the first case a jury returned a verdict in favor of defendant William W. Hutchins, and in the second the court directed a verdict in favor of Hutchins at the close of the testimony. From orders denying his motions for judgment notwithstanding the verdict or for new trials, plaintiff appealed. Modified and affirmed.

*R. V. Blethen* and *F. H. Peterson,* for appellant.
*John Jenswold* and *John D. Jenswold,* for respondent.

Brown, C. J.

These two actions involve substantially the same questions, and, though tried separately in the court below, were submitted together in this court. The first entitled action is one in conversion for the value of certain grain products, claimed to be the property of plaintiff; while the second action is in ejectment to recover the possession of the land on which the crops alleged to have been converted were raised. The question of the ownership and the right of possession of the land is the controlling issue in each action. In the first the issue was submitted to a jury and a verdict returned in favor of defendant William W. Hutchins; and in the second a verdict was directed for Hutchins by the court at the conclusion of the trial. There was a motion for judgment or a new trial in each, which was denied. Henry, plaintiff in one of the actions and defendant in the other, and the moving party, appealed.

Hutchins was the owner of a half section of land near the Canadian border, in Kittson county, this state. He was a farmer and occupied the land in his farming operations. The land was heavily incumbered and Hutchins was otherwise considerably in debt. Crops had been poor prior to and including the year 1916, and his financial condition was growing worse; he was unable to meet his obligations as they became due, even the interest on the mortgage debts. In the fall of 1916 he approached one Bennett, cashier of a bank at St. Vincent, a near-by village, with an offer to sell the farm for $30 per acre, hoping thus to free himself from debts and be enabled to make a new start in some other locality. No definite arrangements for a sale were made at that time, though Bennett then loaned to Hutchins the sum of $1,300, with which to pay off pressing claims, taking a chattel mortgage upon certain personal property as security. On March 1, 1917, at Bennett's suggestion, Hutchins listed the land with Bennett for sale at $30 per acre. Hutchins had confidence in Bennett and previous transactions with him had been satisfactory. Some days after so listing the land for sale, Bennett informed Hutchins that he had a prospective purchaser, and requested that he appear at the Bennett bank with his wife on April 2, when negotiations could be completed and a sale closed if terms were agreed upon. At the appointed time all parties appeared at the bank. The prospective purchaser was a man named Harry S. Stevens, a resident of Minneapolis, and he was represented by defendant Henry. The terms and conditions of sale were discussed, at the conclusion of which, without going into details, a deed conveying the land to Stevens was prepared by Bennett and duly executed and acknowledged by Hutchins and wife, the expressed consideration being the equivalent of $30 per acre for the land, and, on the theory that Stevens would confirm the transactions, a lease of the land, or cropping contract, for the ensuing farming season was also prepared, therein describing Hutchins as the first party, and Stevens, by one T. M. George, his agent, as the second party, and signed by Hutchins in his own behalf and by Henry for Stevens and George. By this contract Hutchins agreed to farm the land for the ensuing season, with a division of the crops raised as compensation of each party; Hutchins to furnish the seed and do the work and have three-fourths and Stevens one-fourth

of all crops raised. Hutchins also executed at the same time a mortgage upon the land in the sum of $1,300 to take the place of the chattel mortgage previously given to the Bennett bank.

None of the documents so executed were delivered at the time, they were all left with Bennett by the mutual understanding and agreement of the parties for later delivery. Of this the record presents no fair dispute, though there is a dispute as to the reasons therefor. Hutchins claims, and he so testified, that a delivery of the documents to Stevens was not to be made by Bennett, the custodian, until Stevens paid all the outstanding mortgages against the land, and evidence thereof in the form of the canceled obligations with satisfactions were delivered to Hutchins, all of which, by the agreement of his agent Henry, Stevens assumed and agreed to pay. Of this agreement to pay, the evidence leaves no reasonable doubt, Henry so testified at folio 201 of the record, though in other parts of his testimony he appears a little uncertain on the point. But the evidence pointed out is clear and specific to the effect stated. The chattel mortgage was to be satisfied, thus releasing the horses, cattle and farm machinery. It was Henry's claim that the purpose of leaving the papers with Bennett was the examination of the abstract of title to the land when it came in. It was also claimed by Hutchins that the conditions of the escrow were all to be complied with and performed within two weeks from the date of the transaction, April 2, and if not performed within that time that there should be no delivery of the papers at all—neither the deed, the cropping contract, nor the $1,300 mortgage to the Bennett bank.

The evidence makes it clear that it was not known at the time whether Stevens would confirm the transaction, or, as expressed by some of the witnesses, "whether he would take the land," but hopes were entertained that he would do so. Early in May following he was informed of the matter and made a trip to the land from his home in Minneapolis, for the purpose of an examination, and to determine whether he would "take the land." After looking the farm over he concluded that he did not want it, and so advised Henry. Henry promptly responded that he would take the matter off his hands and carry it through. This was satisfactory to Stevens and soon thereafter he executed a quitclaim deed of

the land to Henry, and also assigned to him the cropping contract. Hutchins was not present and was not consulted in the matter, and did not know that Stevens had dropped out until some time in May or June. Hutchins did not know of Henry's interest in the matter until July, up to which time he supposed that George had taken the place of Stevens. On May 11, 1917, Henry mailed to Bennett a check for $485.-05, which he claimed represented the balance due Hutchins after deducting all encumbrances against the land from the purchase price. Thereupon Bennett delivered the deed and cropping contract to Henry, though the escrow conditions had not been complied with. Of the amount of that check $85.05 was paid over to Hutchins which he accepted. Bennett claimed the balance as his commission. Hutchins testified that he knew nothing about a commission to Bennett, and he supposed the check was for $85.05. We are satisfied that the situation in this respect was not explained to Hutchins in its true light, and that the acceptance of the money in no way now concludes him from asserting whatever rights the contract secured to him.

Hutchins raised a crop on the land during the season of 1917, following the transaction, and the crop so raised is the subject matter of the first action. Hutchins refused to recognize Henry's claim to one-fourth of the crop, based on the cropping contract, on the ground that the terms of the sale had not been complied with, therefore that Henry had no valid claim either to the crop or to the land. By proceedings before a justice of the peace under the forcible entry and detainer statute, Henry succeeded in getting possession of the farm, thus rendering necessary the action in ejectment, entitled Hutchins against Henry.

The questions presented by the appeal in the first action are: (1) Whether the verdict is sustained by the evidence; and (2) whether there was error in the instructions to the jury or in the refusal to instruct them upon certain features of the case, or in the admission or exclusion of evidence.

1. We have read the record in each action with care and have no difficulty in holding the evidence to fully support the verdict in all essential respects. The court was right in instructing the jury that the deed, mortgage and cropping contract were delivered to Bennett in escrow,

and were not to be delivered until the conditions thereof were complied with, and the evidence is ample to support the conclusion that the conditions of the escrow were as claimed by Hutchins. The conditions were almost wholly uncomplied with at the time Bennett delivered the papers to Henry. The delivery therefore was in violation of the escrow, and, unless waived by Hutchins, ineffective to pass title to the land. Streissguth v. Kroll, 86 Minn. 325, 90 N. W. 577; City of Winona v. Minn. Ry. Const. Co. 29 Minn. 68, 11 N. W. 228. A discussion of the evidence would serve no useful purpose as a precedent or otherwise. It is sufficient to say that we have read it with the result stated.

2. Counsel for Henry requested the court to instruct the jury that Bennett was the agent of Hutchins in the transaction and disqualified to act, therefore that the deposit of the papers with him was ineffective as an escrow agreement. The court properly refused the request. In accepting the documents in escrow Bennett became the agent of both the parties, and was bound in good faith to carry out their agreement in the matter. The fact that Bennett was the agent of Hutchins, if he was such, did not preclude the parties from the right to select him as custodian of the papers. Lindley v. Groff, 37 Minn. 338, 34 N. W. 26. Such is the modern doctrine on facts like those here presented, though by the earlier cases a different rule prevailed. 10 R. C. L. 630; J. I. Case Thr. Mach. Co. v. Barnes, 133 Ky. 321, 117 S. W. 418, 19 Ann. Cas. 246, and note; Alabama C. &. C. Co. v. Gulf C. & C. Co. 165 Ala. 304, 51 South. 570. The case of Van Valkenburg v. Allen, 111 Minn. 333, 126 N. W. 1092, 137 Am. St. 561, is not in point. There was in that case no escrow by understanding and agreement of the parties as in the case at bar.

3. The court charged the jury that it was necessary to comply with the conditions of the escrow within the time fixed by the contract, or, if no time was agreed upon, then within a reasonable time, and, further, that a compliance in September, a period of about five months from the date of the transaction, would not be a reasonable time. The instruction as to what constitutes a reasonable time for compliance with the conditions of the escrow is challenged as reversible error. The point is not sustained. It is to be conceded that the question of reasonable time for

the performance of contract obligations, as applied to this and like situations, ordinarily and as a general rule is one of fact or mixed law and fact for determination by the jury. Yet the court may and should in a proper case determine the question as a matter of law. Stone v. Harmon, 31 Minn. 512, 19 N. W. 88. In the case at bar there was no error in the instruction stated of which Henry may complain. It is clear that the conditions claimed by Hutchins were not complied with substantially or otherwise prior to September. The conditions required Henry to pay and satisfy the encumbrances against the land, surrendering the canceled obligations to Hutchins. That had not been done. Though one of the outstanding mortgages may have been paid the note secured thereby had not been surrendered to Hutchins. Henry acquired assignments of some of the other mortgages, but the secured obligations had not been canceled or discharged. In fact practically all the debts and obligations from which Hutchins was to be relieved by the transaction remained outstanding long after September, and the original holders thereof were demanding payment of Hutchins as late as December. In view of that state of the evidence, which is undisputed, it is a little difficult to discover prejudicial error in the instruction complained of. Henry claimed at times, in giving his testimony, that there was no unconditional obligation to pay those mortgages, directly contradictory to the statement in answer to the question of his counsel as to the consideration passing to Hutchins in the transaction, wherein he stated that: "I agreed to pay off all those mortgages and pay the balance of the money that was coming to Hutchins." The conditions of the escrow not having been complied with, even up to the time of the trial of the action when some of the secured notes were marked paid, there was no error in the instruction stated.

4. Nor was there error in the refusal to instruct the jury on the question of waiver. If the request did not come too late (Gracz v. Anderson, 104 Minn. 476, 116 N. W. 1116), we find no evidence in the record to justify the conclusion that after exacting the conditions stated, which if complied with would relieve Hutchins of his debts, he voluntarily abandoned them. The right secured was a valuable one to him, was one of the controlling reasons for the proposed sale of his farm, and he should be

held to have abandoned or waived it only on a clear showing of an intention to do so, or of facts from which an inference of waiver would follow as a matter of law by necessary implication. His failure to insist upon a strict compliance with the agreement in no way prejudiced Henry. The acceptance of the payment for summer-fallowing part of the land, arrangements for which were made about the time the contract was entered into partly with Henry on the date thereof and partly with George at a later date, clearly was not intended by Hutchins as an abandonment of the conditions of the escrow agreement. While the two mortgages held by the Bennett bank had been paid, as claimed by Henry, the promissory notes secured thereby had not been turned over or delivered to Hutchins; they were retained by Henry. So far as disclosed by the record Hutchins was at no time advised of any steps being taken by Henry looking to a compliance with the contract, save as to the payment of the $85.05 in May. As to all other matters he was permitted to remain in the dark, and it cannot well be said that his silence misled Henry or indicated in any proper view an intention to surrender his rights under the contract. He was entitled to know what Henry intended to do in the premises at an early date, to enable him to shape his farming operations for the fall work. The duty of affirmative action to complete the transaction rested with Henry, not with Hutchins. And having been kept in the dark so long, Hutchins was justified in declaring the matter at an end, as he in effect did after the threshing by refusing to divide the crops. There was no waiver as a matter of law.

5. The other questions raised by the assignments of error do not require special attention. There was no showing of substantial performance of the contract to require an instruction on the subject, and the court did not err in refusing a request in that respect. An examination of the various rulings on the admission and exclusion of evidence discloses no error of a substantial character, at least none that can be said to have been at all prejudicial.

6. The first action, for the alleged wrongful conversion of the grain raised on the farm during the season following the contract, was first tried and the issues were submitted to the jury with a verdict for Hutchins. The second action, in ejectment, came on for trial some two weeks

later, and at the conclusion of the trial a verdict was directed for Hutchins; the conclusion coincided with the result in the other action. While the issues might without error have been submitted to the jury, we conclude on the facts disclosed by the record that there should be no reversal for the failure of the court to do so. Both actions involved the same questions; they were between the same parties; the evidence was the same; the same trial judge, and both were heard at the same term of court. The principal issue in the case, perhaps the controlling one, as we view the record, involved the conditions of the escrow. There was a dispute on that subject, yet the evidence is ample to support the verdict in the first action affirming the conditions to be as claimed by Hutchins. In view of this situation forms of procedure should yield to substance, to the end that there be no inconsistent conclusions in the same controversy, and that expensive litigation may be brought to an end.

7. In conclusion we advert to one matter, of some importance to Henry. It may be assumed that, from the time he took over the contract of sale, after Stevens had declined to go forward with it, he proceeded in good faith in an effort to clear the title to the land, and to perform the conditions of the escrow. He paid, at least he so testified, two mortgages against the land held by the Bennett bank, but he did not surrender the secured obligations to Hutchins, until after the litigation arose; he secured assignments of the Birkholz mortgages, two for $2,500 each, but did not surrender the secured notes to Hutchins as the escrow required; these he marked paid on the trial when on the witness stand at the suggestion of counsel for Hutchins. Hutchins furnished none of the money to pay or acquire the mortgages, and he still justly owes the same. He should not be permitted to recover the land freed from the liens thereof, for that would work a manifest injustice to Henry. The ejectment action will therefore be remanded with directions to the trial court, upon application of either party, to ascertain the encumbrances against the land so paid or acquired by Henry in the transaction, the amount due thereon from Hutchins at the date of the transaction and not paid by him, and make such order and decree as will restore of record the respective liens, as though not paid or marked paid, or otherwise canceled or discharged; the title to the land to be

adjudged in plaintiff by the judgment will be made subject to the encumbrances so ascertained, which should be described therein. This practice is sanctioned by the rule applied in Noyes v. Brown, 142 Minn. 211, 212, 171 N. W. 803; see also Montour v. Purdy, 11 Minn. 279 (384), 88 Am. Dec. 88.

The order appealed from in the first action is affirmed, and, subject to the modification as to a restoration of the mortgage liens in the second, the order appealed from in that action is also affirmed.

QUINN, J., absent, took no part.