**WILLIAM B. TANNER COMPANY, INC., Plaintiff,**

**v.**

**WASECA–OWATONNA BROADCASTING d/b/a Radio Station KOWO, Defendant.**

No. Civ. 2–79–123.

United States District Court, D. Minnesota, Fourth Division.

Oct. 22, 1982.

Timothy D. Kelly, Stuurmans & Kelly, P.A., Minneapolis, Minn., for plaintiff.

Roger P. Brosnahan, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for defendant.

MacLAUGHLIN, District Judge.

This diversity case is before the Court on the parties' cross motions for summary judgment. The parties have stipulated to the relevant facts and agree that the only issue on the merits is the proper interpretation of a disputed term in the contract between the parties.

FACTS

The plaintiff William B. Tanner Co. (Tanner), a Tennessee corporation, is the successor in interest to Pepper Sound Studios, Inc., and Pepper & Tanner, Inc. Tanner provides promotional audio products to radio stations throughout the United States. One of these products is the Tanner Total Sound Library (Library), a collection of pre-recorded business commercials, musical jingles, sound effects, and other recordings, updated monthly, for use in radio advertising. Tanner is typically paid for providing a station with the Library partly in cash and partly through the right, upon request,

to have the station broadcast a designated number of "spot announcements"—air time advertising segments of one minute or less. Through contracts with numerous radio stations, Tanner holds a national inventory of such spot announcements for sale to advertisers. Defendant Waseca-Owatonna Broadcasting (Waseca), a Minnesota corporation, is licensee and operator of Radio Station KOWO in Waseca, Minnesota.

On August 25, 1971, Tanner and Waseca entered into a written contract whereby Tanner agreed to supply Waseca with the Library, including at least ten new Library selections per month. In return, Waseca agreed to pay Tanner $65 per month for the term of the contract, a total of $5,460. As additional payment, Waseca agreed to provide Tanner 2,800 one-minute spot announcements. The term of the contract was seven years, with an automatic seven-year renewal unless either party gave 60 days' notice of its desire not to have the contract renewed.

Tanner fully performed its obligations under the contract. Waseca paid all but two of its monthly installments. Waseca does not dispute its liability to Tanner for the remaining $130. In addition, Waseca honored each of Tanner's 67 requests for spot announcements. On June 5, 1978, Waseca gave Tanner timely notice of termination of the contract. On the same date, Waseca notified Tanner that it would refuse to honor any additional requests by Tanner for spot announcements after November 20, 1978, the contract's termination date.

Upon receiving this notice from Waseca, Tanner sued for anticipatory breach of the contract. Tanner's position is that, under the explicit terms of the contract, its bargained-for spot announcements were "valid until used," and that Waseca was under a continuing obligation to provide spot announcements until Tanner had requested all 2,800 spots. Waseca argues that its obligation to provide spot announcements ceased as to any spots which were not requested before the contract terminated. The parties ask the Court to construe paragraph 2 of their contract which provides:

Station further agrees to additional payment for the above productions in broadcast time upon request by PEPPER & TANNER, INC., as follows: 2800 one-minute spots. In consideration of Mars/Pepper-Tanner making delivery in prepayment of the above time, station agrees that it will deliver said time credit and affidavits of performance in the same manner as accorded other cash customers. *And since they are considered prepayment for service(s) rendered, they are to be valid until used.* A conversion of the above spot total to a cash credit based upon lowest rate per time classification as per published rates in SRDS [Standard Rate & Data Service] this date, may be exercised by PEPPER & TANNER, INC. in the event nighttime schedules and/or shorter length announcements are desired.

(Emphasis added). Tanner seeks damages equal to the current average value of a spot announcement ($4.25) times the number of unused spots (2,733), a total of $11,615.25.[1]

## DISCUSSION

Tanner's contracts with radio stations for rental of Tanner's Library and other products have been the source of an extraordinary amount of litigation over the last sev-

---

1. At the request of both parties the hearing on cross motions for summary judgment was delayed for more than a year pending the decision of the United States Court of Appeals for the Tenth Circuit in a case involving a Tanner contract with language nearly identical to that at issue here. The Tenth Circuit held against Tanner in that case. *William B. Tanner Co. v. Plains Broadcasting Co.,* No. 80–1408, slip op. (10th Cir. Feb. 23, 1982) (per curiam), *aff'g* 486 F.Supp. 1313 (W.D.Okl.1980); *see* note 6 *infra* and accompanying text.

Following the Tenth Circuit's decision, counsel for the parties agreed informally to settle the case. In its brief, Waseca argues for dismissal of Tanner's cause of action on the ground that the settlement agreement is binding. Tanner contends that the settlement agreement is void because its counsel had no authority to make the settlement offer. The Court will not decide whether a binding settlement agreement exists, since at oral argument Waseca's counsel stated his preference for a decision on the merits of Tanner's claim.

eral years. Courts across the nation have been called upon to determine the meaning of the language "valid until used" as it appears in Tanner's standard form contracts.[2]

At the outset, the Court notes the remarkable lack of clarity of the above-quoted paragraph of the contract. It is almost inconceivable that a large company, doing business nationwide, would adopt such a poorly drafted document as its standard form contract.

 In construing a disputed contract term, a court should look to the contract as a whole. *Midway Center Assocs. v. Midway Center, Inc.*, 306 Minn. 352, 237 N.W.2d 76, 78 (1975). Any ambiguity in the language of a contract will be resolved against the drafter. *Cherne Indus., Inc. v. Grounds & Assocs.*, 278 N.W.2d 81, 89 (Minn.1979). A contract is ambiguous if it is reasonably susceptible of more than one construction. *Medtronic, Inc. v. Catalyst Research Corp.*, 518 F.Supp. 946, 950 (D.Minn.), *aff'd*, 664 F.2d 660 (8th Cir. 1981); *Collins Truck Lines, Inc. v. Metropolitan Waste Control Comm'n*, 274 N.W.2d 123, 126 (Minn.1979).

Applying these principles to the present case, the Court concludes that the language "valid until used" is ambiguous. Viewing the contract as a whole, this language is reasonably susceptible to more than one construction for several reasons.

First, the contract nowhere explicitly provides that Waseca must honor Tanner's requests for spot announcements after the termination of the contract. In the absence of such a provision, Waseca reasonably assumed that Tanner's right to request spots would end with the termination of the contract. The contract was to last seven years and Waseca promised to provide 2,800 spot announcements. To consume an average of 400 spot announcements per year, Tanner would have had to request one or two spots per day, not an unreasonably large number.[3] It may well be that Tanner's representatives intended a much longer time over which the spot announcements could be requested, *see* Affidavit of Reid Eason, plaintiff's exhibit C, at 2, but Waseca cannot be bound by that intention if it was not clearly expressed in the contract.

Second, the paragraph of the contract dealing with assignment of the license undercuts Tanner's construction of the contract. Paragraph 3 of the contract provides in relevant part:

> Should controlling interest in station change hands, resulting in voluntary assignment of license [to use Tanner's Library], station agrees that any above unused broadcast time credit and remaining monies due will become a condition of such assignment of license and therefore a responsibility of the new controlling interest.

This paragraph requires Waseca to bind its successor in interest to fulfill Waseca's obligations under the contract in the event of Waseca's assignment of its license to use Tanner's Library. Obviously, the license could be assigned only during the term of the contract. The absence of any provision requiring Waseca to bind its successor in interest to assume Waseca's obligations after the termination of the contract strongly suggests that the contract gives Tanner no post-termination right to request spot announcements. If Tanner possessed any such right, presumably the contract would have required Waseca to insure that its successor in interest observe that right.

Third, Tanner argues that if "valid until used" does not mean "valid beyond the termination date of the contract," then the language is superfluous and would not have been included in the contract. But an

**2.** The decisions in these cases have not been consistent. The parties have cited four decisions supportive of Tanner's position and an equal number supportive of Waseca's position.

**3.** In actuality, Tanner requested only 67 spot announcements during the term of the contract, an average of about ten spots per year.

At this rate, it would have taken Tanner 280 years to request all 2,800 spots, a factor which argues against Tanner's construction of the contract as allowing an unlimited time for performance. *See Pepper & Tanner, Inc. v. KEDO, Inc.*, 13 Wash.App. 433, 535 P.2d 857, 859 (1975).

equally plausible explanation is that Tanner included the language "valid until used" in order to negate any presumption that it was required to request a certain number of spots during each year of the contract term or lose them.

■■■ Since the language "valid until used" is ambiguous, and since Tanner drafted the contract, the Court construes the disputed language against Tanner and concludes that the contract does not specify the time during which Tanner has the right to request spot announcements.[4] Where a contract does not specify the time for performance, "the general rule is that the contract must be performed within a reasonable time."[5] *Hill v. Okay Constr. Co.,* 312 Minn. 324, 252 N.W.2d 107, 114 (1977). Under the circumstances of this case, a reasonable time for performance is the seven-year term of the contract.[6] As noted above, Tanner would have had to request only one or two spot announcements per day to consume all 2,800 spots within the seven-year period. The Court therefore holds that Tanner's right to request spot announcements expired on November 20, 1978, the contract's termination date.[7]

4. Tanner's reliance on two recent district court decisions holding to the contrary is misplaced. In *William B. Tanner Co. v. Hickerson,* No. CA 279 4, slip op. (N.D.Tex. May 11, 1982), the court construed the language "valid until used" to entitle Tanner "to draw upon its inventory of prepaid spots without limitation of time." *Id.* at 4. However, the breach of contract in *Hickerson* was not the refusal of the defendant radio station to honor Tanner's requests for spot announcements after the termination of the contract as it is in the present case. Rather, the breach occurred *during* the term of the contract and consisted of the defendant radio station's sale of its assets to another radio station "without providing in the written buy/sell agreement that the new owner be responsible for the outstanding cash and spot obligations owed to TANNER" under the contract. *Id.* *Hickerson* does not support Tanner's position that it has the right to request spot announcements *after* the termination of the contract.

Tanner also relies heavily on *William B. Tanner Co. v. Sparta-Tomah Broadcasting Co.,* 543 F.Supp. 593 (W.D.Wis.1982), in which the court concluded that the language "valid until used" gave Tanner the right to request spot announcements without regard to the contract's time limitation. *Id.* at 595. The facts of *Sparta-Tomah* are similar to the present case with one important difference. The defendant radio station in *Sparta-Tomah* continued to honor Tanner's requests for spot announcements for some nine years after the termination of the contract. Only in the tenth year did the defendant suddenly refuse to honor any further requests by Tanner. The defendant's delay in challenging Tanner's right to post-termination spot announcements was a key factor in the court's refusal to imply a reasonable time for performance under the contract. *Id.* at 596. In contrast, Waseca notified Tanner of its intent to refuse further requests for spot announcements at the same time it notified Tanner it was terminating the contract. Waseca has not honored any requests by Tanner since the date

the contract terminated. *Cf. William B. Tanner Co. v. Plains Broadcasting Co.,* 486 F.Supp. 1313, 1318 (W.D.Okl.1980) (holding upon similar facts that Tanner's right to request spot announcements is limited to the term of the contract), *aff'd per curiam,* No. 80–1408, slip op. (10th Cir. Feb. 23, 1982). *Sparta-Tomah* is therefore distinguishable on its facts.

5. Ordinarily, what constitutes a reasonable time for the performance of contract obligations is a question of fact or of mixed law and fact to be determined by the jury. *Henry v. Hutchins,* 146 Minn. 381, 178 N.W. 807, 809 (1920). "Yet the court may and should in a proper case determine the question as a matter of law." *Id.* This is such a case. The parties submitted the case to the Court on stipulated facts. The stipulation concludes with the statement, "[b]oth defendant and plaintiff believe that, upon the above stipulated facts, the Court can decide the . . . issue [in the case]." Stipulation at 4. In the absence of genuine issues of material fact, the case may properly be decided on summary judgment. Fed.R.Civ.P. 56.

6. This conclusion is consistent with the holdings of other courts which have found the language "valid until used" to be ambiguous. *See William B. Tanner Co. v. Plains Broadcasting Co.,* 486 F.Supp. 1313, 1318–19 (W.D.Okl. 1980), *aff'd per curiam,* No. 80–1408, slip op. (10th Cir. Feb. 23, 1982); *Pepper & Tanner, Inc. v. KEDO, Inc.,* 13 Wash.App. 433, 535 P.2d 857, 859 (1975).

7. Tanner's contention that this holding "unjustly enriches" Waseca is without merit. Tanner had a full seven years in which to request spot announcements. Waseca honored every request for spot announcements during that time. Tanner's failure to request more than 67 spot announcements is no reason to extend the time for performance.

Tanner also contends that, if Waseca believed that Tanner's right to request spot an-

Accordingly, IT IS ORDERED that Waseca's motion for summary judgment on Tanner's claim for the value of the unused spot announcements is granted, and Tanner's motion for summary judgment on that claim is denied.

IT IS FURTHER ORDERED that Tanner's motion for summary judgment on its claim for $130 of unpaid monthly installments is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.

nouncements was limited to the contract period, Waseca had a duty to notify Tanner of that interpretation at the outset of the contract. But the contract was a standard form drafted by Tanner. If anyone had a duty to insure that both parties clearly understood the terms of the contract it was Tanner. Further, Waseca gave Tanner more than five months' notice that it would not honor requests for spot announcements after the termination of the contract, even though the contract required only 60 days' notice of termination.