440

ERNEST, Appellant, vs. SCHMIDT and others, Respondents.

*January 10—February 5, 1929.*
*September 14—October 8, 1929.*

For the appellant the cause was submitted on the brief of *Alexander, Burke & Clark* of Milwaukee.

For the respondents Schmidt, Strauss, Krause, Brusse, Lenicheck, and Grunwald the cause was submitted on the brief of *Lenicheck, Boesel & Wickhem* of Milwaukee.

For the respondent Westphal there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Maxwell H. Herriott,* of counsel, all of Milwaukee, and oral argument by *Mr. Herriott.*

The following opinion was filed February 5, 1929:

DOERFLER, J. Plaintiff's complaint can hardly be commended as a model of pleading. In many respects it is vague and indefinite, and it is only by careful study of the various parts and of the pleading as a whole that the intentions of the pleader become reasonably apparent. Such pleadings are not conducive to a speedy administration of justice, and have a tendency rather to impede the course of justice than to promote it. The brief states that the agreement set forth in the complaint in verbatim was drafted by a lawyer. This is hardly credible, but if it be assumed that such is the case, it would be nigh impossible for us to conceive of a more indefinite and faulty document.

The trial court sustained the general demurrer to the complaint. In the briefs filed by defendants' counsel it is quite

apparent that they were confronted with the difficulties above referred to in their effort to construe the complaint and to determine the general purport, from a legal standpoint, of such pleading. However, they are of the opinion that the agreement should be construed as an offer on the part of the defendants individually to purchase their proportionate share of the property in the event that it should become necessary for the plaintiff to take over the property to protect his loan at the due date of his note. In order to meet any other plausible theory of the complaint, they have also treated it as an agreement of guaranty and as one of indemnity. We are persuaded that the opinion as expressed by defendants' counsel as to the legal aspect of the transaction is correct; that is to say, that it constitutes an offer to purchase a proportionate share of the property by the individual defendants upon the happening of certain incidents and upon the performance of certain conditions precedent.

The first condition set forth in the agreement has reference to the necessity of the plaintiff taking over the property in order to protect his loan at the due date of the note, which was March 1, 1926. That necessity must exist appears from the face of the agreement, and such necessity is not expressly pleaded. However, we are satisfied that by taking all of the provisions of the agreement and of the allegations in the complaint together, under our liberal rules of Code pleading, it can be said that the facts appearing are such as may be construed to mean a condition of necessity.

It is further argued by counsel for the defendants that it must appear definitely in the complaint that the property was taken over by the plaintiff either at the due date of the note, viz. March 1, 1926, or within a reasonable time thereafter. In this respect defendants' counsel argues that assets like those involved in this case are of a very highly speculative nature; that their value consists in what is actually produced upon the property or upon the apparent prospects of

production; that unless the title to the property be acquired at the earliest possible date in which it can reasonably be acquired, the defendants might sustain substantial losses. Here again it appears to us that good pleading would have required more definite allegations than are contained in the complaint, for it is there alleged that after the trust deed became due (which was in part executed to secure the plaintiff's note) an action was commenced in the district court of the county of Harris, state of Texas, for the purpose of foreclosing under said trust deed, and such proceedings were thereafter had in said action that said property was sold and bid in at the sale by the plaintiff and others, and said sale duly confirmed by the said court. We can take judicial cognizance of the fact that the foreclosure of the trust deed, culminating in the sale of the property, involves much labor and consumes considerable time. It is true that the note of the plaintiff fell due on March 1, 1926, and that this action was not begun until 1928. In the meantime the foreclosure proceedings were prosecuted, with the result above referred to. It cannot be assumed, under this state of the pleadings, that the plaintiff was negligent or was guilty of unnecessary delay in procuring the title to the property as above stated. The pleading thus excepted to by defendants' counsel is one which the court would have ordered to be made more definite and certain had a motion to that effect been made.

The agreement itself, and particularly when taken in connection with the allegations in the complaint, indicates quite clearly that the title to the property was to be bid in by the plaintiff if he deemed it necessary to protect his loan at the time when the property was sold under proceedings brought to foreclose the trust deed. The agreement recites, among other things, that the loan of $11,500 was made by plaintiff to the corporation in order that the corporation might continue in the development of its property. In consideration of such loan, each defendant agreed to pay his *pro rata* part

of the sum of $11,500 upon condition, among other things, that it became necessary for the plaintiff to take over the property to protect his loan. The portion of the agreement just referred to is definite; it constitutes one of the principal conditions precedent which must be performed before the defendants incur a liability. This liability did not consist of a repayment of the amount of money loaned by the plaintiff to the corporation, but of the payment by each of a *pro rata* share in order that by such payment each defendant would obtain his *pro rata* share of the property. This included not only a portion of the property, but the entire property. If the procurement of less than half of the property by the plaintiff would amount to a compliance with a prerequisite to secure title to the property, then it can with equal force and plausibility be argued that if the plaintiff had procured a quarter or a tenth interest in the property the defendants would be equally bound to pay their *pro rata* share of the loan and interest, in order to procure a *pro rata* share of the acquired interests of the plaintiff in the property.

In the consideration of the demurrer now before us we must be confined to the language employed in the agreement itself. When the offer was made by the plaintiff to deed to each of the defendants his *pro rata* share of plaintiff's interest in the property acquired, this offer was not accepted. The title to the property then was transferred by the company to the Wisconsin Production Company, a corporation, and the latter thereupon issued its capital stock to the extent of 500 shares of no par value, and distributed the same among the various persons from whom it obtained title, in proportion to the respective interests they had acquired under the foreclosure sale. It is here alleged that the plaintiff received 233½ shares, which is less than one half of the capital stock of the corporation. While the defendants were under no obligation, under the terms of the agreement, to accept capital stock of a corporation instead of a *pro rata*

interest in the property itself, nevertheless the distribution of this stock is clearly indicative of the proportionate share of the title acquired by the plaintiff upon the foreclosure sale.
. The agreement itself seems rather harsh. It does not fix the amount which plaintiff was authorized to pay for the property upon the foreclosure. To obtain such title as is required by the agreement might involve a very heavy obligation. All of this could not be foreseen definitely when the agreement itself was entered into.

We can realize and appreciate the difficult and complex situation which under the circumstances confronts the plaintiff. It may also be that, from a moral standpoint, the defendants are subject to severe censure for the attitude assumed by them with respect to this agreement. But we must take the agreement as it is, and not as it might have been. If the parties hereto were contented to proceed under an agreement in the form in which it appears, it is not within the province of the court to interfere. They must abide by their own contract. The court cannot make a contract for them, nor can it modify or change the existing contract, unless such contract was entered into through fraud or mistake. The pleading was therefore, for the reason herein stated, a proper subject for a general demurrer.

It is also our opinion that the general demurrer was properly sustained on the ground that the contract set forth in the complaint was void for the reason that it did not comply with the provisions of sec. 240.08 of the Statutes, known as the statute of frauds. See the following cases, cited in the brief of defendants' counsel: *Rowell v. Barber,* 142 Wis. 304, 125 N. W. 937; *Popp v. Swanke,* 68 Wis. 364, 31 N. W. 916; *Brandeis v. Neustadtl,* 13 Wis. 142; *Steuerwald v. Richter,* 158 Wis. 597, 149 N. W. 692; *Huntington v. Burdeau,* 149 Wis. 263, 135 N. W. 845; *Langley v. Sanborn,* 135 Wis. 178, 114 N. W. 787; *Scheuer v. Cochem,* 126 Wis. 209, 105 N. W. 573.

Defendants further demurred to plaintiff's complaint because it appears upon the face of the complaint that there is a defect of parties defendant, in that the Wisconsin Production Company and its stockholders are not made parties defendant in the action. It is conceded by defendants' counsel that if the action were deemed one brought for the recovery of damages for breach of contract, then the court properly overruled this demurrer; but, on the contrary, that if this action is deemed to be one to enforce specific performance of the contract, then, in view of the allegations of the complaint that the property was transferred to the Wisconsin Production Company, a corporation, which is now the owner of such property, said corporation and its stockholders are necessary parties defendant, without whose presence the decree of specific performance in no way could be made effective. We are clearly of the opinion that the action is brought to recover damages, and that it has all the ordinary indicia of an action of that kind; that therefore the order overruling this demurrer must be sustained.

The second demurrer was interposed upon the ground that several causes of action have been improperly united, in that the various causes therein contained do not affect all the parties to said action. The third ground of demurrer is thus stated: "That several causes of action have been improperly united, in that the various causes therein contained disclose a several liability and not a joint liability of the defendants, if any."

Heretofore in this opinion, in treating of the general demurrer, we have arrived at the conclusion that the liability of the defendants is not joint; that each defendant, if liable at all, is liable for his *pro rata* share. From this it follows that a number of separate, individual causes of action have been united in one count in the complaint, and that any one of these separate causes of action does not affect the other defendants. Let us assume that the complaint had set out

ten causes of action in ten different counts, each count being against one of the defendants. We take it that it would require no persuasion to arrive at the conclusion that the complaint would be demurrable upon the ground that a number of non-joinable causes of action had been united in one complaint. The difference between the illustration and the actual situation as it exists in the instant case consists merely of the fact that instead of there being ten separate counts in the one instance, as appears from the illustration, there is one count in the instant action, containing ten different causes of action which are non-joinable. Sec. 263.06 of the Statutes provides in part as follows:

"*Demurrer to complaint.* The defendant·may demur to the complaint when it shall appear upon the face thereof: . . .

"(5) That several causes of action have been improperly united."

Sec. 263.04 of the Statutes provides:

"*Uniting causes of action.* The plaintiff may unite in the same complaint several causes of action, whether they be such as were formerly ·denominated legal or equitable or both. But the causes of action so·united must affect all the parties to the action and not require different places of trial, and must be stated separately."

To confine, as in the instant case, the defendants merely to a motion to make more definite and certain, would in effect not only emasculate the statute, but wipe it out altogether. In considering the question thus raised we must not lose sight of the recognized difference existing between joinable causes of action and non-joinable causes of action. Where the causes of action are joined in one complaint, and instead of being individually stated in separate counts they are joined in one count, the defective pleading is properly reached under the statute by a motion to make more definite and certain. This goes upon the theory that the causes of action are joinable and can be properly pleaded in one com-

plaint. On the other hand, where they are non-joinable they have no proper place in the complaint at all, and cannot be united, either in separate counts or in a jumble in one count. It is therefore considered that the statute requiring a motion to make more definite and certain was intended for an intermingling of joinable causes of action in one count, leaving an intermingling of non-joinable causes of action in one count subject to the statutory provision which authorizes a demurrer where two or more causes of action are improperly united. This distinction is manifested to a degree in the decisions of this court and seems to be the uniform rule in other jurisdictions. In the case of *Fischer v. Hintz*, 145 Minn. 161, 176 N W. 177, the Minnesota court treats the subject as follows:

"The facts stated in the complaint are set forth as, but manifestly constitute more than, a single cause of action. Plaintiff contends that, if this be so, defendant should have applied for an order requiring her to plead separately as many causes of action as may be embraced in the complaint, and that demurrer was not his remedy. In this we do not concur. When a complaint contains causes of action *which cannot properly be united,* and they are mingled and combined, the defendant is not required to move, in the first instance, for the separation of the several causes of action in order that he may demur when such separation has been accomplished. He may demur for misjoinder, though the pleading in form sets forth but one cause of action, if in reality it embraced two or more *that cannot be joined in any form.* Pomeroy, Code Remedies, § 344; *Anderson v. Scandia Bank,* 53 Minn. 191, 54 N. W. 1062; *Goldberg v. Utley,* 60 N. Y. 427; *Leidersdorf v. Second Ward Sav. Bank,* 50 Wis. 406, 7 N. W. 306; *Mulholland v. Rapp,* 50 Mo. 42." (Italics ours.)

An examination of the authorities upon the subject in this state discloses that in *Buerger v. Buerger,* 178 Wis. 352, 190 N. W. 126; *July v. Adams,* 178 Wis. 375, 190 N. W. 89;

and *McIntyre v. Carroll*, 193 Wis. 382, 214 N. W. 366, language is used based, however, upon the respective issues in these cases, which does not distinguish between joinable and non-joinable causes of action. In the *Buerger Case* the court uses this language:

"It is one of the grounds of the demurrer that two causes of action have been improperly joined, one being against two persons as trustees, and the other an action against one of them individually for an accounting as to an entirely separate transaction. This objection would be valid if the alleged causes of action were separately stated, but in this complaint they are intermingled in one count. It is well settled that in such case the remedy is not by demurrer but by a motion to make more definite and certain. *Danielson v. Garage E. M. Co.* 151 Wis. 492, 494, 139 N. W. 443; *Nichol v. Alexander,* 28 Wis. 118."

In the *Nichol Case* above cited it was said that the causes of action were properly joinable if separately stated. In the *Danielson Case, supra,* cited in the *Buerger Case,* the causes of action arose out of the same contract, and would have been joinable if separately stated; so that it appears quite clearly that the court in the *Buerger Case* did not have in mind the distinction between joinable and non-joinable causes of action, and, in fact, this distinction was not discussed in the opinion.

In the *July Case, supra,* it is said:

"The allegations which are alleged to state the separate causes of action are matters which are alleged in setting forth various transactions by means of which a conspiracy to defraud the plaintiff was carried out. The fact that intermingled with these allegations there are statements of fact which, if taken by themselves, might constitute a separate and distinct cause of action as against some one or more of the defendants, is no ground for demurrer."

The language thus used can hardly be construed to imply that where several distinct non-joinable causes of action are

intermingled in one count the pleader is debarred of his right to demur but is confined to a motion to make more definite and certain. It would also appear in the *July Case* that the facts alleged in the separate causes of action, in reality constitute a part and parcel of the conspiracy alleged in the complaint.

The *McIntyre Case, supra,* is the latest expression of the court upon the subject, and cites *Danielson v. Garage E. M. Co.* and *Buerger v. Buerger, supra.* In this case also it would appear that the distinction between joinable and non-joinable causes of action was not pressed by counsel or considered by the court.

The rule contended for here by defendants' counsel is recognized and approved by this court in *Barnes v. Beloit,* 19 Wis. 93; *Carstens v. Fond du Lac,* 137 Wis. 465, 119 N. W. 117; *Burnham v. Milwaukee,* 155 Wis. 90, 143 N. W. 1067.

After due and careful consideration this court is of the opinion that a distinction between joinable and non-joinable causes of action should be definitely recognized by this court, and by doing so the court will be in harmony with the overwhelming weight of authority in other jurisdictions. We conclude, therefore, that the learned circuit court was in error when it overruled defendants' second and third demurrers.

The order of the trial court overruling the demurrer based upon an alleged defect of parties is affirmed; the order overruling the demurrers upon the ground that causes of action have been improperly united, which pertains to the second and third demurrers, is reversed, with directions to sustain such demurrers; and the order of the court sustaining the general demurrer is affirmed.

*By the Court.*—It is so ordered.

*On rehearing.*

The following opinion was filed October 8, 1929:

ROSENBERRY, C. J.   In this case a motion for a rehearing was granted and the matter has been again fully reargued and reconsidered.   The consideration of this case has been made extremely difficult from the beginning for the reasons stated in the original opinion.

The writer of the original opinion arrived at the conclusion therein stated with considerable reluctance, which was shared by other members of the court.   Few cases appear upon our calendar involving so much confusion and matters of such indefinite nature.

The primary question, as was said in the original opinion, is whether or not the agreement should be construed as an offer on the part of the defendants individually to purchase their proportionate share of the property in the event that it should become necessary for the plaintiff to take over the property to protect his loan at the due date of his note, or whether it should be considered as one of a series of connected and interrelated transactions arising between the parties to the agreement of March 13, 1924.

The dominant element of that part of the transaction set out in the instrument of March 13, 1924, is that the plaintiff is to loan to the Ellwood Company the sum of $11,500. This loan is to be made for the purpose of enabling the company to carry on its development work.   If the development work should not prove successful, it was apparently contemplated that the plaintiff would have to protect his loan by taking over the property of the company.   It appears from the allegations of the complaint that the company was known to be extremely hard up for money if not in a failing condition.   This loan was to be made to the company for the

benefit of all the parties to the instrument because they were stockholders in the corporation which was to be aided by the loan. If the plaintiff was required to take over the property, he did it as much for the protection of the interest of the other stockholders as for himself because under the terms of the agreement they were to contribute their *pro rata* share of the amount loaned. Upon further reflection we are convinced that the instrument dated March 13, 1924, cannot be construed as an agreement to purchase an interest in the property described. It is apparent from other allegations in the complaint that the property was then subject to a mortgage lien of $30,000. Certainly there is no agreement, express or implied, in the instrument of March 13, 1924, that plaintiff should advance the amount of this mortgage lien. All he could take over without taking up the mortgage would be the equity in the property. To say that the instrument required him to advance the $30,000 and convey to the other parties to the instrument their *pro rata* share of the property upon payment of their *pro rata* share of $11,500, is clearly unreasonable and untenable. While upon its face the instrument bears the construction put upon it in the original opinion, we are of the opinion that upon consideration of all the facts and surrounding circumstances with reference to which the parties dealt, it should not be so construed. The apparent purpose of the transaction was to save the company. The amount necessary or thought to be necessary in order to bring about the desired end was $11,500. The parties to the instrument made themselves liable for their *pro rata* share of the amount to be advanced by the plaintiff, and it was agreed that whatever should be saved out of the property should be held by the plaintiff for the benefit of all signers to the instrument. This action is therefore an action to compel the defendants to pay their *pro rata* share of the amount advanced by the plaintiff under the instrument of March 13, 1924, subject to an accounting by the plaintiff for such interest in the property as he secured. It is an account-

ing action between the parties to the instrument to determine their respective rights and obligations. It is stated in the original opinion that it was indicated that it was the duty of the plaintiff to bid in the property "if he deemed it necessary to protect his loan at the time the property was sold under proceedings brought to foreclose the trust deed." We are convinced upon reconsideration of the case that this was an error; that from the allegations of the complaint it does not appear that it was agreed, intended, or expected that in consideration of the signing of the agreement by the defendants the plaintiff bound himself to protect the property against the consequences of a foreclosure of the mortgage lien. That was the principal ground relied upon in reaching what we now regard as an erroneous conclusion.

In the view which we now take of the case it becomes apparent that the statute of frauds has no application for the reason that the instrument does not amount to a contract to purchase an interest in land. It is further apparent that there is no misjoinder of parties or causes of action, particularly under the provisions of sec. 260.17, Stats., which provides:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, whether the action is brought upon the instrument or by a party thereto to recover against other parties liable over to him, . . . may all or any of them be included in the same action at the option of the plaintiff."

*By the Court.*—It is ordered that the former mandate be and it is hereby vacated and set aside; that the order of the trial court overruling the demurrer based upon an alleged defect of parties is affirmed; that the order overruling the demurrer on the ground that causes of action are improperly united is affirmed. The order of the court sustaining the general demurrer is reversed and the cause remanded for further proceedings according to law. No costs allowed either party. Respondents to pay the balance of clerk's fees.