*T. Simmons, Jr.,* for appellees.

52253. WTTI BROADCASTERS, INC. et al. v.
LLOYD et al.
52254. WILLIAM B. TANNER COMPANY v. WTTI
BROADCASTERS, INC. et al.

MARSHALL, Judge.

The pivotal question in this appeal (case no. 52253) and cross appeal (case no. 52254) is whether there had been a cancellation of a contract between two parties to this interpleader action.

The record shows that in September, 1971, Southwest Ohio Cable Company acquired WTTI Broadcasting Company by purchasing its stock from various stockholders including one Lloyd. As part of the stock purchase agreement Lloyd represented that there were no existing contractual commitments owed by WTTI other than those specified on a separate schedule. Four years after the acquisition, a claim was made against WTTI for $6,156 by Tanner for unused one-minute advertising spots which Tanner contended were due it under a 1966 contract it had with WTTI prior to the acquisition by Southwest. This Tanner contract obligation had not been listed on the schedule in the stock purchase agreement. Southwest informed Lloyd of the claim and withheld from Lloyd the final installment on the stock purchase in the amount of $6,156 because of the misrepresentation by Lloyd that this debt did not exist. Lloyd claimed that the 1966 contract with Tanner had been previously canceled under a provision in WTTI's contract with Tanner which permitted the station to cancel the contract upon 60-day notice and payment of $150 which it had given and paid. Tanner contended the contract had not been canceled. Southwest filed an interpleader action against Lloyd and Tanner paying $6,156 into the court and praying for a declaratory judgment of the rights of the parties. It also, by amendment to its complaint, sought $180 due on account from Tanner for advertising spots it had run for Tanner after the cancellation of the contract.

The contract in question between WTTI and Tanner calls for the latter to deliver certain advertising "productions" (recorded jingles, music, singers, etc.) to the radio station for use by the station's advertisers. This service was to be rendered for 364 weeks (seven years) and commenced in May, 1966. In consideration for this service WTTI agreed to pay Tanner $39.75 per month and to provide 4,200 one-minute advertising spots during certain hours of WTTI's broadcasting time. The contract provided: "These spots are preemptable, and since they are considered partial payment for service(s) received, *they are to be valid until used."* (Emphasis supplied.) There was also a typed-in provision which stated, "Station [WTTI] retains the right of cancellation after three years, upon 60 days notice in writing and payment of $150 short-rate:"

Pursuant to the last-quoted provision, WTTI around May, 1971, sent a 60-day notice to Tanner and a check for $150 for "Payment in full — Creative Sales Contract Termination." Tanner accepted the check under the belief that only the cash payment portion of the contract was canceled thereby. Tanner believed that the cancellation did not affect its right to the unused remaining spots (2,052) because the contract provided the spots were "valid until used." When it attempted to use some of those spots after the cancellation the station would provide spots for Tanner but only at the going rate of $3 per spot. Tanner did not pay for 60 spots so provided after cancellation because it felt WTTI owed it 2,052 spots which remained under the 1966 contract.

Under this state of the evidence the trial court found, as follows: "[Tanner] asserts that all of the broadcast spots (4200) were earned and due prior to the cancellation and that there were 2,052 unused one-minute broadcast spots as of the date of cancellation. This position contradicts that part of the contract which permits cancellation upon 60 days notice. Tanner's position would prevent cancellation by WTTI Broadcasters, Inc. If all of the broadcast spots (4200) were due Tanner on the execution date of the contract (May 20, 1966) there would have been no reason for the parties to provide a method of cancellation. The contract was a standard form contract

prepared by Tanner, therefore, any contradictions therein must be resolved against Tanner." The court then ordered that Southwest pay Lloyd $6,156; that Tanner not be awarded any amount from WTTI; and that WTTI not be awarded any amount from Tanner. WTTI appeals the denial of its claim for $180 (case no. 52253) and Tanner cross appeals the denial of its contract claim for the unused spots, or $6,156 (case no. 52254). *Held:*

1. We affirm the cross appeal, case no. 52254, and reverse the main appeal, case no. 52253. The critical question, as it is in all contract construction cases, is what did the parties intend by the cancellation provision in the contract. Tanner contends that the provision applied only to the monthly cash payments. Such a construction is plausible since this provision is typed in at the end of the paragraph dealing with the monthly payments and the spots consideration is set forth in a separate paragraph. The $150 was accepted by Tanner as payment of the "short-rate" of the remaining monthly installments. (There was some $960 due in future monthly payments for the two years remaining on the contract.) So, contrary to the trial court's finding, there was a reason for the cancellation provision other than spot cancellation. Furthermore, Tanner did try to assert its right to remaining spots and kept a credit account for them after the "cancellation," believing, as the contract provides, they were "valid until used."

On the other hand the cancellation provision does not say it applies only to the monthly cash payments. It is reasonable to apply the cancellation provision to the spots as well, for otherwise Tanner's right to use the spots could run indefinitely — even beyond the length of the contract. WTTI treated the *entire* contract as canceled as indicated by the notation on the check and its refusal to honor any of the unused spots under the contract.

Reading the contract as a whole, we find it ambiguous in that one provision allows WTTI to cancel the contract, yet another provision permits an indefinite right to use spots. The ambiguity is demonstrated by the parties' own divergent response to the cancellation. It is undisputed that Tanner provided the form and prepared the contract in the instant case. As such, the rule of

construction of Code § 20-704, subsection 5 applies: "If the construction is doubtful, that which goes most strongly against the party executing the instrument, or undertaking the obligation, is generally to be preferred." See *Pinkerton & Laws v. Atlantis Realty Co.,* 128 Ga. App. 662 (3) (197 SE2d 749); *Howkins v. Atlanta Baggage &c. Co.,* 107 Ga. App. 38 (1) (129 SE2d 158). Construing the contract against Tanner we must conclude that Tanner's right to use spots was subject to the cancellation provision and was canceled. Thus that portion of the trial court's judgment, which is cross appealed in case no. 52254, is affirmed.

2. However, that portion of the court's judgment which provides that WTTI recover no amount from Tanner is reversed. The evidence shows without contradiction that Tanner owed $180 on account with WTTI for the latter's running of spots for Willard Tablets, after the cancellation. Tanner's only defense is that the 1966 contract spots were not canceled and it was entitled to set off the Willard Tablet spots against those spots owed by WTTI under the contract. Having rejected this contention by finding that the contract had been canceled, the trial court could not give it credence as a defense to WTTI's claim. This portion of the judgment, appealed in case no. 52253, is reversed.

*Judgment reversed in case no. 52253. Judgment affirmed in case no. 52254. Pannell, P. J., and McMurray, J., concur.*

SUBMITTED JUNE 8, 1976 — DECIDED JUNE 21, 1976.

*Mitchell, Mitchell, Coppedge & Boyett, Warren N. Coppedge, Jr., John C. Curtis,* for WTTI Broadcasters, Inc. et al.

*McCamy, Minor, Phillips & Tuggle, John T. Minor, III, John C. Curtis,* for Lloyd et al.

*John T. Minor, III,* for William B. Tanner Co.