WILLIAM B. TANNER CO., INC.,
Plaintiff-Appellee,

v.

SPARTA–TOMAH BROADCASTING
COMPANY, INC., d/b/a Radio
WCOW, Defendant-Appellant.

No. 82–2888.

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1983.
Decided Aug. 30, 1983.

Richard J. Heitman, Rice & Abbott, Sparta, Wis., for defendant-appellant.

Jeff Scott Olson, Julian & Olson, Madison, Wis., for plaintiff-appellee.

Before WOOD and CUDAHY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.*

CUDAHY, Circuit Judge.

This is an appeal in a diversity action brought by William B. Tanner Co., Inc. ("Tanner"), against the Sparta-Tomah Broadcasting Co., Inc., d/b/a Radio Station WCOW ("WCOW") alleging a breach of contract. This appeal presents interesting questions of law concerning the interpretation and construction of the parties' contract. We reverse the judgment of the district court, 543 F.Supp. 593, and remand for a new trial.

## I

Tanner, and its predecessors in interest, is in the business of selling or leasing promotional materials and services to radio stations. In addition to monetary compensation, Tanner also trades its products to radio stations in return for advertising air time on those stations. Tanner then acts as a "distributor" for that air time, selling air time to advertisers and inventorying unused time until it can be resold.

In August of 1966, Tanner's predecessor (hereinafter "Tanner") and WCOW entered into a "lease" contract providing that Tanner would furnish a promotional package to WCOW for a period of three years in exchange for $1,908 and 2,340 one-minute spot announcements (commercial air time). In December of 1967, Tanner and WCOW entered into an additional one-year "license"

contract whereby Tanner furnished WCOW with promotional material in exchange for $477 and 520 one-minute spots. The cash payments have been made in full.

The two contracts were essentially identical form contracts drafted by Tanner. Certain minor changes were made in the contracts, however, at the request of WCOW. The 1966 contract contained the following language concerning the spots:

3. Station also agrees to pay additionally for use of the above productions in broadcast time upon request by MARS BROADCASTING, INC., as follows: *2340* one-minute spots, with ⅓ of total number in drive time and the remainder in best time available between 6 A.M. and 7 P.M. These spots are preemptable, and since they are considered partial payment for service(s) received, they are to be valid until used. A conversion of the above spot total to a cash credit based upon lowest rate per time classification as per published rates as in SRDS this date, may be exercised by MARS BROADCASTING, INC., in the event nighttime schedules and/or shorter length announcements are desired.

The 1967 contract contained an identical provision, except that the number of spots was smaller and the "best time" provision specified between "6 A.M. and 9 P.M." rather than between "6 A.M. and 7 P.M."

Tanner made no request for use of spots during the three-year period of the first contract or the one-year period of the second contract. Tanner requested and received use of 34 spot announcements in 1974 and 48 spot announcements in 1978. In response to a request for spots in January of 1979, WCOW sent Tanner a letter which read:

Gentlemen:

Enclosed is a Radio Broadcast Order for d-Con Rat Killer which arrived here today. I am returning it to you as rejected. The original agreement with your company is something like a dozen years designation.

* Honorable Anthony J. Celebrezze, Senior Circuit Judge for the Sixth Circuit, is sitting by

old. It is so old I no longer have a record of it. Neither do I know how much you have used on a total of how much. If you have something which shows this, please send it to me for my examination. Until I receive it, I can schedule nothing more that comes through the William B. Tanner Co.

This lawsuit for breach of contract followed. Cross motions for summary judgment were filed. The district court granted Tanner's motion, but only as to liability. The court found that the language of the contract was clear and unambiguous. The court rejected WCOW's contention that the limited term of the contracts with respect to the promotional materials created an ambiguity when considered with Tanner's apparently unlimited right to use the spots. The court held that the spots were to be available to Tanner without any time limitation. The court further rejected WCOW's argument that the court should imply a reasonable time for the availability of the spots to avoid sanctioning an unlimited obligation. The district court acknowledged the persuasiveness of the "reasonable time" argument, but declined to imply a reasonable term both because WCOW had acted unreasonably in "unilaterally" deciding that the time had become unreasonable and because the district court viewed the argument for provision of a reasonable time as an unsupportable effort to raise the issue of laches.

The district court then held a bench trial limited to the issue of damages. Two different types of evidence were presented as to the value of the spots. Tanner argued that the spots should be valued based upon the station's published rates, while WCOW contended that these published rates sub-stantially exceeded the rates for which Tanner could actually re-sell the spots. In arriving at damages, the district court utilized the published rates in effect in January of 1979 and entered judgment for Tanner in the amount of $9,775.78.

## II

The contract which is at the heart of this dispute has turned out to be a significant boon to the legal profession; it has prompted a raft of cases across the country where courts have struggled to discern exactly what was intended by Tanner and its customers when they signed the contract and agreed, in words of somewhat astonishing imprecision, that the spots in question were intended to be "valid until used." We can limit our attention to cases with facts which are directly analogous to the case before us and we have found or been cited to a myriad of cases involving contracts containing language identical to that presented in the case before us. Unfortunately, we do not find the analysis in any of these cases to be fully compelling.

The courts which have addressed the interpretation of Tanner's form contract have, almost universally, considered the fundamental question before them to be whether the contract was "ambiguous." *See, e.g., William B. Tanner Co., Inc. v. Mesa Broadcasting Co.,* 571 F.Supp. 28 (D.Colo.1983); *William B. Tanner Co., Inc. v. Waseca-Owatonna Broadcasting,* 549 F. Supp. 411 (D.Minn.1982). Typically, as in the case before us, the question arises sometime after Tanner has fully performed its side of the bargain, and its customer, the broadcasting company, seeks to avoid its apparent obligation to provide advertising time.[1] There is no con-

---

1. Another strand of cases involving the contract has arisen as a result of a provision which was apparently part of many of the contracts, providing that if the controlling interest in the radio station were to change hands, the station agreed that any "unused broadcast time credit and remaining monies due will become a condition of such assignment of license and therefore a responsibility of the new controlling interest." In *William B. Tanner Co., Inc. v. Hickerson,* No. CA 279 4 (N.D.Tex. May 11, 1982), the defendant Hickerson sold his interest in a radio station which had such an agreement with Tanner. The court found a breach of the contract, and assessed damages for the value of all unused spots. Cases such as *Hickerson* are not particularly relevant to the case before us because the courts in those cases, to resolve the issue whether the contract has been breached, need not directly address the issue of how long the commitment to run the spots remains valid.

sistent result or dominant trend in these cases; some hold that the contract is not ambiguous, that "valid until used" means that the spots are available for Tanner's use until exhausted, and that Tanner is thus entitled to damages, *see, Mesa Broadcasting; William B. Tanner Co., Inc. v. Granite District Radio Broadcasting Co.,* 49 Rad. Reg.2d 219 (Utah Dist.Ct.1980); some find the contract ambiguous, construe the contract against the drafter, Tanner, limit the validity of the spots to a reasonable time (most commonly the time period during which Tanner provided services), and deny Tanner any damages, *see, Waseca-Owatonna Broadcasting; William B. Tanner Co., Inc. v. Plains Broadcasting Co., Inc.,* 486 F.Supp. 1313 (W.D.Okl.1980), *aff'd,* No. 80–1408 (10th Cir. Feb. 23, 1982); *WTTI Broadcasters, Inc. v. Lloyd,* 139 Ga.App. 115, 227 S.E.2d 905 (1976); and some implicitly find the contract to be incomplete as to time, construe the contract against the drafter, and limit the validity of the spots to the contract term, *see, William B. Tanner Co., Inc. v. Plains Broadcasting Co., Inc.,* No. 80–1408 (10th Cir. Feb. 23, 1982); *Pepper & Tanner, Inc. v. KEDO, Inc.,* 13 Wash. App. 433, 535 P.2d 857 (1975).

▪ We do not entirely agree with any of these approaches. The analyses used by the courts which have considered this contract do not appear to have adequately distinguished between disputes over *expression* as opposed to disputes arising from *omission.*[2] That is, the problem of interpreting the *meaning* which parties intend contractual terms to have is distinct and should be considered separately from the problem of construing the *scope* of a contract.

▪ Courts appear to have traditionally undertaken both types of analysis under the single guise of interpreting the language and intent of a contract. Presumably, this merging of the two types of analysis has been motivated by the stated desire of courts not to "write contracts or supply

omissions in contracts" where the drafting of the parties has been deficient. *Ratcliff v. Aspros,* 254 Wis. 126, 35 N.W.2d 217 (1949); *Ernst v. Schmidt,* 199 Wis. 440, 223 N.W. 559, 227 N.W. 26 (1929). Courts, therefore, seek to resolve any contractual "ambiguity" by seeking to "ascertain the true intentions of parties." *Stradinger v. City of Whitewater,* 89 Wis.2d 19, 30, 277 N.W.2d 827 (1979). It is also clear, however, that courts do not rigidly apply the doctrine of avoiding interpolation, and that the process of interpretation has also traditionally included the resolution of problems of omission. Thus, it is well accepted that, for example, when a contract is silent as to a time for performance, the law implies that it shall be performed within a reasonable time. *Western Lime & Cement Co. v. Copper River Land Co.,* 138 Wis. 404, 120 N.W. 277 (1909).

▪ In the case before us, we see no ambiguity in the words, "valid until used." The process of determining ambiguity is essentially a process of interpreting the meaning of words. Only when a contract provision is "reasonably and fairly susceptible to more than one interpretation" may the provision be deemed "ambiguous." *Jones v. Jenkins,* 88 Wis.2d 712, 722, 277 N.W.2d 815 (1979). We do not think that the provision before us can reasonably be said to have two differing intrinsic meanings. The words, in and of themselves, are quite simple and declarative. They state, quite clearly, that the spots are to be "valid," or available for use, until they are "used," or consumed by Tanner.

Further, the actions of the parties in no way indicate any divergence of understanding as between them with respect to the meaning of the words. Wisconsin courts have held that issues of ambiguity can be in part determined from examining whether the actions of the parties to a contract are sufficiently inconsistent as to indicate differing constructions of the contract. *Jones,* 88 Wis.2d at 723, 277 N.W.2d

**2.** This is a distinction explored in some depth in E. Farnsworth, CONTRACTS 445–534 (1982). *See also* Farnsworth, *Disputes over Omissions in Contracts,* 62 COLUM.L.REV. 860 (1968); 3 A. Corbin, CORBIN ON CONTRACTS § 534 (1960).

815. *See also Zwerk v. D.P. Way Corp.*, 70 Wis.2d 426, 234 N.W.2d 921 (1975) (evidence of parties' practical construction of the contract is highly probative of intended meaning of those terms). Tanner's obligations to provide promotional services to WCOW ended in 1969. No spots were apparently requested by Tanner until 1974, or approximately five years after the date that WCOW now argues should be deemed to be the "end" of the contract. There is no dispute that WCOW honored Tanner's 1974 request for spots without protest and without any attempt to bill Tanner for the air time. Another request was similarly honored in 1978. It was only on Tanner's third request for spots, in 1979, that WCOW refused to honor Tanner's request.[3] This course of conduct indicates that both parties understood the contract terms to provide that the spots were to be usable for some period *after* Tanner's performance was completed. While a disagreement may exist as to the proper length of this period, the parties' actions indicate that no ambiguity existed with respect to the meaning of "valid until used."

The conclusion that the contract is unambiguous does not, of course, end our inquiry into its proper construction. While we find no ambiguity of expression to be present in the contract, we do find a deficiency or omission of scope. Quite simply, the contracting parties neglected to specify a time of performance for WCOW's side of the contractual obligation. Tanner, of course, argues that there is no omission or gap in the contract, but rather that the parties intended to make the option to run the spots a commitment of potentially infinite duration. While this is certainly something the parties could have explicitly agreed to, we are extremely reluctant to construe the rather cursory language of the contract before us to have such a dramatic effect.

 Courts are reluctant to interpret contracts providing for some perpetual or unlimited contractual right unless the contract clearly states that that is the intention of the parties. *Capital Investments, Inc. v. Whitehall Packing Co., Inc.*, 91 Wis.2d 178, 280 N.W.2d 254 (1979); *Consumer Ice Co. v. United States*, 475 F.2d 1161, 201 Ct.Cl. 116 (Ct.Cl.1973); 3 A. Corbin, CORBIN ON CONTRACTS § 553 (1960). It has been repeatedly held by the Wisconsin Supreme Court that contractual constructions or interpretations which avoid construing a contract to have an indefinite duration are preferable. *Farley v. Salow*, 67 Wis.2d 393, 227 N.W.2d 76 (1975); *Kovachik v. American Automobile Ass'n*, 5 Wis.2d 188, 92 N.W.2d 254 (1958). It is also well established that Wisconsin courts will imply a reasonable time for performance when the contract is silent as to time. *Farley; De Lap v. Institute of America, Inc.*, 31 Wis.2d 507, 143 N.W.2d 476 (1966). *See also* RESTATEMENT (SECOND) OF CONTRACTS § 204 (1981).

 We find that the contract before us is incomplete with respect to the duration of the validity of the spots.[4] It is therefore necessary to remand the case to the district court to determine what is a "reasonable time" to imply as to duration of validity.[5] This is apparently a question of fact under

3. This circumstance provides some distinction from many of the other cases involving this contract, where Tanner's first request for spots made after Tanner's portion of the contract's obligations had been performed was refused. *See, e.g., Waseca-Owatonna Broadcasting; WTTI Broadcasters, Inc.; Pepper & Tanner, Inc.; Granite District Radio Broadcasting Co.*

4. Other courts have come to a similar conclusion. The Tenth Circuit, in a *per curiam* opinion, implicitly adopted such an approach, finding that no time limit could be "ascertained from the wording of the agreement" or that the contract was "silent as to the time span in issue." *Plains Broadcasting*, slip op. at 5. The

Washington Court of Appeals also followed this type of analysis, although the court's actual holding with respect to the contract relies on both an incompleteness theory and an ambiguity theory. *Pepper & Tanner*, 535 P.2d at 859.

5. We note that we do not think, as some courts have, that a "reasonable" time is, under the facts of this case, necessarily defined by the time provided for Tanner to perform its side of the bargain. The actions of the parties clearly indicate that whatever time for performance by WCOW is, indeed, "reasonable," neither party thought that that time period was limited to three years, or the time for Tanner to perform.

**1160**

Wisconsin law. *De Lap,* 31 Wis.2d at 512, 143 N.W.2d 476, and the parties should have an opportunity to present evidence on this issue. Because of our disposition of the case, we do not reach the arguments raised by the parties with respect to the correct measure of damages.

### III

For the reasons discussed above, we therefore REVERSE and REMAND the judgment of the district court for further proceedings not inconsistent with this opinion.