**BANGOR & AROOSTOOK RAILROAD COMPANY**

v.

**Camille A. DAIGLE.**

Supreme Judicial Court of Maine.

Argued April 30, 1992.

Decided May 28, 1992.

Alan F. Harding (orally), Harding Law Offices, Presque Isle, for appellant.

Sarah J. McPartland–Good (orally), Mitchell & Stearns, Bangor, for appellee.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, and COLLINS, JJ.

COLLINS, Justice.

Camille A. Daigle appeals from a Superior Court order (Aroostook County, *Pierson, J.*) granting Bangor & Aroostook Railroad Company (B & A) partial summary judgment in an action brought by B & A against Daigle for breach of contract and seeking a declaratory judgment. On appeal, Daigle contends the Superior Court erred when it granted B & A partial summary judgment because genuine issues exist as to several material facts and B & A is not entitled to summary judgment as a matter of law. We disagree and affirm the judgment.

Camille Daigle owns a piece of property in Fort Kent that is bisected by B & A's tracks. Access to his land on the far side of the tracks is possible by way of a private railroad crossing, built for that purpose. The crossing has been in use ever since the construction of the railroad, at which time Daigle's father farmed the property on both sides of the tracks. B & A claims that in 1967 Daigle entered into an agreement that for the first time gave rise to any legal interest he may have in the crossing. At that time, Daigle wanted to put a trailer park on the far side of the property. B & A agreed to let his tenants use the crossing, provided he maintained the approaches and agreed to indemnify it for any liability arising out of the use of the crossing. Daigle testified that he never signed the agreement.

Daigle converted the farm land on the far side of the tracks into a trailer park. The park's tenants and Daigle have continued to use the crossing to gain access to the park. A less direct access route does exist, but that route is not amenable to the transport of mobile homes.

This action arises out of a complaint B & A brought against Daigle, alleging that he had breached the terms of the 1967 agreement. B & A sought indemnification for costs incurred in a separate negligence action and a declaratory judgment as to the parties' rights with respect to the crossing. B & A moved for summary judgment on Count III of its complaint, in which it argued that because the 1967 agreement had no termination clause it could be terminated at will by either party and B & A was entitled to close the crossing. The Superior Court granted B & A's motion for partial summary judgment, certified the partial judgment pursuant to M.R.Civ.P. 54(b) and this appeal followed.

I.

■ When reviewing a grant of summary judgment this Court views the evidence in the light most favorable to the non-moving party. *Hankard v. Beal*, 543 A.2d 1376, 1377 (Me.1988). Daigle contends that a genuine issue of material fact exists as to whether the 1967 agreement is legally effective. He swore that he never signed the agreement. The agreement itself, and numerous exemplars of his signa-

ture were submitted by B & A. One of those exemplars was a letter Daigle admitted signing. In that letter he refers to the agreement. "I already have an agreement for [the crossing] signed and witnessed on November 30, 1967." However, we need not resolve this factual issue because B & A was entitled to summary judgment as a matter of law regardless of whether Daigle signed the agreement.

■ If Daigle did sign the agreement, B & A argues that the agreement is terminable at will because it lacks a termination clause. Generally courts will not interpret contracts as being of infinite duration unless the agreement expressly states that is the intention of the parties. *William B. Tanner Co. v. Sparta–Tomah Broadcasting Co., Inc.*, 716 F.2d 1155, 1159 (7th Cir.1983). Courts, while recognizing a right to terminate at will, have limited that right by requiring that a contract remain in effect for a reasonable period of time and reasonable notice be given. *Tanner*, 716 F.2d 1159; *see also* Calamari & Perillo, *The Law of Contracts*, § 2–9(2) (3rd ed. 1987) and U.C.C. § 2–309(2) and (3).

■ The agreement was negotiated twenty-four years ago. Notice of B & A's intent to close the crossing was given when it filed its complaint. Because Daigle denied signing the agreement he never advances his understanding of the agreement's scope and intended duration. In addition, he fails to contend that reasonable notice was not given. The Superior Court's determination that the agreement had been in effect for a reasonable time and that reasonable notice had been given is supported by the record. Therefore, if Daigle did sign the agreement, it was terminable at will and B & A was entitled to summary judgment.

## II.

Claiming that he did not sign the agreement, Daigle contends that genuine issues of material fact exist as to whether his predecessor in title, his father, had established an easement by prescription and as to whether Daigle is entitled to an easement by estoppel, an implied reservation of an easement by necessity, or whether an easement had been established by a prior oral agreement or custom and usage.

■ Under 23 M.R.S.A. § 6025 (1992), no title to real estate can be acquired from a railroad company by adverse possession. This provision has been in effect since 1929. From the record it appears that the railroad was built circa 1910. Assuming a prescriptive easement could be acquired from a railroad company prior to the enactment of the statute in 1929, it would have been impossible for Daigle's father to have acquired an easement by prescription because the tracks were only on his land for nineteen years prior to the passage of the law, not twenty. Furthermore, Daigle presented no evidence on which the court could have premised a finding that his father's use of the crossing had been open, notorious and under claim of right. To the contrary, he alleges that his father had an agreement with B & A for the use of the crossing.

■ Daigle similarly failed to present any evidentiary support for the other legal theories he advances. He merely lists certain affirmative defenses that could give rise to a right to the use of the crossing without offering any supporting evidence to counter that presented by B & A. For instance the sole evidentiary support for his allegation that his father had a prior oral or written agreement with B & A is the assertion that "my father had one somehow." More than that is needed to create a genuine issue of material fact as to the existence of a prior agreement between his father and B & A, especially when that statement was preceded by the statement; "I don't see why I should have one. My father never did." "Even though [B & A] has the burden of establishing that no genuine issue of material fact exists, Rule 56(e) imposes upon [Daigle] the obligation to come forward with affidavits or other materials setting forth by competent proof specific facts that would be admissible in evidence to show ... that a genuine

issue of fact exists...." Field, McKusick & Wroth, *Maine Civil Practice* § 56.4 (Supp.1981). Daigle has failed to submit sufficient evidentiary support for the affirmative defenses he raises. Therefore, even if he did not sign the agreement, the Superior Court was correct in deciding that B & A was entitled to partial summary judgment.

The entry is:

Judgment affirmed.

All concurring.